Jeanne M. SUTTON, by her Guardian Jeffrey S. Sutton, Jeffrey S. Sutton, Chayce Sutton, by his Guardian ad Litem, Eugene A. Gasiorkiewicz, and Carly Sutton, by her Guardian ad Litem, Eugene A. Gasiorkiewicz, Plaintiffs-Respondents,†

v.

Olli KAARAKKA, M.D., and Wisconsin Patients Compensation Fund, Defendants,

LIBERTY MUTUAL INSURANCE COMPANY and In-Sink Erator, Inc., Intervening Parties-Appellants.

Court of Appeals

*No. 90-0966. Submitted on briefs October 8, 1990.—Decided November 7, 1990.*

(Also reported in 464 N.W.2d 29.)

†Petition to review denied.

On behalf of the intervening-parties-appellants, the cause was submitted on the briefs of *Paul R. Riegel*, of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee and *Daniel J. Kelley*, of *Schoone, Ware, Fortune & Leuck, S.C.* of Racine.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Eugene A. Gasiorkiewicz*, of *Hanson, Gasiorkiewicz & Weber, S.C.* of Racine.

Before Nettesheim, P.J., Scott and Anderson, JJ.

ANDERSON, J. In-Sink Erator, Inc. and its worker's compensation insurer, Liberty Mutual Insurance Company (employer, collectively), appeal from an order denying the employer's motion to intervene and to participate in Sutton's medical malpractice settlement pursuant to sec. 102.29, Stats. At issue on appeal is the applicability of an amendment to sec. 102.29(3), which became effective after Sutton's work accident but before the medical malpractice.[1] The amendment removed the prohibition against employers sharing in the employee's awards from medical malpractice claims. Because the amendment does apply to this case, we reverse the order and remand to allow the employer to intervene for purposes of sec. 102.29.

The underlying facts are undisputed. In the fall of 1987, Sutton suffered a work-related injury to her shoulder. Treatment failed to relieve her condition and she agreed to stabilization surgery.

On May 11, 1988, during the anesthetic induction just prior to the surgery, Sutton went into cardiac arrest and, as a result, suffered oxygen deprivation to the brain. Sutton was comatose for several months.[2] A medical malpractice action was filed against the anesthesiologist. A settlement of $4,000,000 was reached.

At the time the settlement was filed in the trial court, the employer filed a motion to intervene pursuant to sec. 102.29, Stats. On April 1, 1988, which was between the time of the initial work injury and the sub-

---

[1]As amended, sec. 102.29(3), Stats., reads:

(3) Nothing in this chapter shall prevent an employe from taking the compensation he or she may be entitled to under it and also maintaining a civil action against any physician, chiropractor, psychologist or podiatrist for malpractice.

[2]Sutton has regained consciousness, but she has profound cognitive-motor-expressive deficits.

sequent medical injury, an amendment to sec. 102.29 became effective. The legislature removed language that barred employers or worker's compensation insurers from having an "interest in or right to share in the proceeds of any civil action against any physician, chiropractor or podiatrist for malpractice." Section 13, 1987 Wis. Act 179; *see also* sec. 102.29(3) (1985–86).[3]

Even though the medical malpractice occurred after April 1, 1988, the trial court reasoned that the date of the work-related injury would control. Because the work-related injury occurred in 1987 under the unamended statute, the trial court denied the employer's motion to intervene and share in the settlement proceeds.

When the facts are undisputed, the application of a statute to a particular set of facts is a question of law. *See Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 758, 300 N.W.2d 63, 68 (1981). We decide questions of law independently without deference to the decision of the trial court. *Ball v. District No. 4, Area Bd. of Vocational, Technical & Adult Educ.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

The determinative issue is whether the employee's cause of action created by a third party's negligence relates back to the initial work injury, or whether the third party's negligence creates a separate cause of action for purposes of sec. 102.29, Stats. If the cause of

---

[3]The legislature deleted the language based on a 1987 Wisconsin Court of Appeals decision which held the language unconstitutional. *Racine Steel Castings v. Hardy,* 139 Wis. 2d 232, 407 N.W.2d 299 (Ct. App. 1987). After the legislature amended the section, the Wisconsin Supreme Court held that the language was constitutional. *Racine Steel Castings v. Hardy,* 144 Wis. 2d 553, 426 N.W.2d 33 (1988). The legislature has declined to return the language to sec. 102.29(3), Stats. *See* sec. 43, 1989 Wis. Act 64.

action from the third party's negligence relates back to the initial work accident, then the subsequent amendment would be inapplicable and the employer could not share in Sutton's settlement. If the third party's negligence created a separate cause of action, then the subsequent amendment does apply and the employer has a right to intervene for purposes of sec. 102.29. We conclude that the third party's negligence creates a separate cause of action for purposes of sec. 102.29.

Sutton relies on *Jenkins v. Sabourin,* 104 Wis. 2d 309, 311 N.W.2d 600 (1981), to argue that her medical malpractice cause of action relates back to the initial work injury. In *Jenkins,* the court held that the exclusivity-of-remedy provision in the worker's compensation act precluded a common law cause of action by an employee against the employer for contribution for negligently providing medical attention for a work injury. *Id.* at 311, 311 N.W.2d at 601–02. In its reasoning, the court stated that:

> [A]ny medical injury as the consequence of treatment of a work-related injury relates back to the original compensable event and the consequences of medical treatment . . . are the *liability* of the employer . . ..
> It is established Wisconsin law that, when an employee is treated for a work-related injury and incurs an additional injury during the course of treatment, the second injury is deemed as one growing out of, and incidental to, employment—in the sense that the employer, by virtue of the Act, becomes *liable* for the augmented injury.

*Id.* at 315–16, 311 N.W.2d at 603–04 (emphasis added). Sutton cites to sec. 102.03(4), Stats., which provides that the right to compensation is determined in accordance with the law in effect on the date of the injury. The argument concludes that because Sutton's work-related

injury was before the amendment, the amendment does not apply.[4]

We reject Sutton's argument for four reasons. First, sec. 102.03(4), Stats., does not apply to this case. Compensation is defined as "worker's compensation." Section 102.01(2)(am), Stats. This definition does not include damages from third party negligence.

Second, we find *Jadofsky v. Iowa Kemper Ins. Co.,* 120 Wis. 2d 494, 355 N.W.2d 550 (Ct. App. 1984), applicable. In *Jadofsky,* after the plaintiff's initial work injury, sec. 102.18(1)(bp), Stats., of the worker's compensation act was enacted to provide the exclusive means of suing an insurance company for bad faith in handling compensation payments. *Id.* at 496, 355 N.W.2d at 552. After the amendment went into effect, the insurance company stopped making compensation payments and the plaintiff sued for bad faith. *Id.* The plaintiff argued that the bad faith claim related back to the initial injury and thus, the amendment did not bar his separate claim for bad faith. *Id.* The company argued that the cause of action at issue was the injury from stopped payments, and thus, sec. 102.18(1)(bp) prevented the plaintiff from suing for bad faith outside the worker's compensation statute. *Id.* at 497, 355 N.W.2d at 552. The court concluded that the bad faith claim was separate and was not capable of enforcement until the payments were stopped. *Id.* at 499, 355 N.W.2d at 553. Because the payments stopped after sec. 102.18(1)(bp)

---

[4]Sutton argues that because the initial work injury was before the amendment, applying the amendment in this case would be retroactive application in violation of *Chappy v. LIRC,* 136 Wis. 2d 172, 401 N.W.2d 568 (1987). Because we conclude that the medical malpractice does not relate back to the initial work injury, we need not address the retroactive application issue.

became effective, the plaintiff could not bring a separate bad faith claim. *Id.*

Both *Jadofsky* and the case before us have two injuries and an intervening statutory amendment. Although the second injury flows from the first, each injury acts to invoke a separate statutory purpose. In both cases, the initial work injury creates continuing *liability* on the part of the employer in the event that an employee is treated for a work-related injury and receives another injury. *Jenkins,* 104 Wis. 2d at 316, 311 N.W.2d at 604. However, in *Jadofsky,* the payment stoppage is treated as a separate injury from the initial work injury for purposes of the bad faith claim. *Jadofsky,* 120 Wis. 2d at 498, 355 N.W.2d at 553. The fact that the act addressed bad faith claims did not necessarily prevent the claim from being treated separately. *See id.* Likewise, the injury received from the third party negligence is a separate injury for purposes of sec. 102.29, Stats. The fact that the act specifically addresses third party claims does not lead to the conclusion that the two injuries cannot be treated as creating separate claims.

The third reason we reject Sutton's argument is because the general statutory scheme of the worker's compensation act supports the analysis that the third party negligence creates a separate cause of action. Even though sec. 102.29, Stats., allows an employee to bring a suit against a third party separately from a suit for worker's compensation benefits, *see Kottka v. PPG Indus., Inc.,* 130 Wis. 2d 499, 513–14, 388 N.W.2d 160, 166–67 (1986), the section is also a statutory subrogation provision for the employer. *See Racine Steel Castings v. Hardy,* 144 Wis. 2d 553, 568, 426 N.W.2d 33, 38 (1988). Subrogation in the worker's compensation act places the employer "in the shoes of the beneficiary to whom it has

paid or is to pay compensation." *Murray v. Dewar,* 6 Wis. 2d 411, 415, 94 N.W.2d 635, 637 (1959).

It follows that the employer cannot stand in the shoes of the employee until the employee is able to bring a suit against the third party. The employee can only bring a suit after the third party has acted negligently, and thus the employer cannot have subrogation rights until the third party has harmed the employee. Because Sutton's cause of action against the doctor did not accrue until after the amendment became effective, neither did the employer's right to subrogation under sec. 102.29, Stats.

Lastly, the legal standard for determining when a cause of action accrues dictates that a third party's negligence creates a separate cause of action. A cause of action accrues when there exists a claim capable of present enforcement, a suable party against whom to enforce the claim and a party who has a present right to enforce the claim. *Hunter v. School Dist. of Gale-Ettrick-Trempealeau,* 97 Wis. 2d 435, 442, 293 N.W.2d 515, 519 (1980). Under the plain reading of sec. 102.29, Stats., a cause of action cannot accrue until a third party has acted. In this case, the third party was the medical doctor. There could not have been an enforceable claim or a suable party until the doctor had acted. Thus, the doctor's negligence created a separate cause of action.

We conclude that the employer's motion to intervene should be granted. We remand for procedures consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.